UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RENU GUPTA, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 9682 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**M<span/>EMORANDUM O<span/>PINION AND O<span/>RDER**

Renu Gupta brought this suit against her employer, the City of Chicago, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Doc. 13. The City has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim. Doc. 14. The motion is granted, though Gupta will be given a chance to replead.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Gupta's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Gupta as those materials allow. *See Pierce v. Zoetis*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at this stage, the court does not vouch for

their accuracy.  *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Gupta, a Regional Nutritional Coordinator with the City's health department, manages seven of its thirteen health clinics.  Doc. 13 at ¶¶ 7, 30.  She has worked for the City for 28 years.  *Id*. at ¶ 6.  JoAnn Peso has been her supervisor since May 2013.  *Id*. at ¶ 8.  In November 2015, an African-American employee filed an internal complaint of discrimination against Peso.  *Id*. at ¶ 9.  Gupta provided the human resources department with several hours of testimony about the complaint.  *Id*. at ¶¶ 9-10.

Within a few weeks, in early December 2015, Peso emailed Gupta asking her to complete a self-evaluation form.  *Id*. at ¶ 11.  Gupta had never seen such a form, nor had Peso evaluated Gupta since becoming her supervisor.  *Id*. at ¶¶ 11, 13.  The City did, however, conduct occasional performance evaluations of its employees.  *Id*. at ¶¶ 16, 26.  Those evaluations could be taken into account when an employee was being considered for promotion or reassignment, and scoring below 2.5 (out of 5) triggers a "performance improvement plan" and, absent improvement, termination.  *Id*. at ¶ 26; Doc. 19 at 3.  Gupta's other supervisors consistently gave her 4's and 5's on her prior evaluations.  Doc. 13 at ¶ 16.

On December 17, Gupta attended a performance evaluation meeting with Peso and Kai Tao, a deputy commissioner of the health department.  *Id*. at ¶¶ 12, 14.  Peso gave Gupta an overall rating of 3, meaning "satisfactory."  *Id*. at ¶ 15.  Gupta received sub-scores as low as 1.9 in the "core values" category, and the qualitative portion of the evaluation identified several performance deficiencies.  *Ibid*.  Gupta was shocked and humiliated by the negative aspects of her review; no one had ever before criticized her work for the City.  *Id*. at ¶ 19.  Peso had not

2

previously voiced any of these concerns to Gupta, and Peso told Tao in the December 17 meeting that she had not done so out of fear that Gupta would retaliate. *Id*. at ¶¶ 15, 17.

After the meeting, an upset Gupta sought out Reginald Green, an equal employment officer, to report the evaluation as retaliatory. *Id*. at ¶ 20. Green referred Gupta to the Employee Assistance Program ("EAP"), with whom she later met once. *Id*. at ¶¶ 20-21, 31. The complaint does not specify what action, if any, EAP took. Gupta also scheduled a second meeting with Peso and Tao to discuss her evaluation further. *Id*. at ¶¶ 22-23. At that meeting, on December 22, Gupta asked about several of Peso's specific criticisms that she felt were unfair, such as a complaint about Gupta's missing a meeting when one of her children was sick; Peso responded that she had high standards but refused to explain further. *Id*. at ¶ 24. Based on the meeting, Tao ordered Peso to change the 1.9 ratings in the "core values" section to 2.9, which brought Gupta's overall rating up to a 3.1. *Id*. at ¶ 25. The qualitative criticisms remained unchanged. *Ibid*.

Gupta believes that the performance review was intended by Peso to "set her up for failure and/or discharge." *Id*. at ¶ 27. Gupta does not, however, allege that she has in fact been fired—or demoted, for that matter—since the review. The complaint alleges that her emotional distress over the review caused crying spells and difficulty sleeping. *Id*. at ¶ 31.

The complaint describes several other instances of arguably adverse treatment of Gupta by Peso and Tao. It alleges that Peso has regularly monthly meetings with Jaclyn Castellanet, who has the same title as Gupta and manages the City's other six health clinics, but that Peso holds no such meetings with Gupta. *Id*. at ¶ 30. It also alleges that, in June 2016, Tao called Gupta into a meeting to chastise her for yelling at subordinates, while refusing to describe specific instances of such conduct. *Id*. at ¶ 32. Finally, Gupta sought a meeting with Tao seeking clarification of her job duties and the standards under which she was being evaluated,

but Tao refused to talk with her, citing a lawsuit that Gupta had brought against the City—presumably this one, as Gupta added this allegation when amending her complaint, though the complaint does not say. *Id.* at ¶ 29.

## Discussion

To state a retaliation claim under Title VII, a plaintiff must allege facts showing that: "(1) [s]he engaged in protected activity; (2) [s]he suffered a materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016); *see also Bell v. EPA*, 232 F.3d 546, 554 (7th Cir. 2000). The City focuses on the second element, contending that Gupta has failed to identify any action by Peso or Tao that qualifies as "materially adverse." Doc. 16 at 4-5.

"In the retaliation context, determining whether an action is materially adverse means inquiring whether it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Boss*, 816 F.3d at 918. "To rise to the level of an adverse action, a change must be one that a reasonable employee would find to be materially adverse … ." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016) (internal quotation marks omitted). Adverse actions for purposes of a retaliation claim may include:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Poullard v. McDonald*, 829 F.3d 844, 857

4

(7th Cir. 2016); *see also Boss*, 816 F.3d at 918 ("Because Title VII does not set forth a general civility code for the American workplace, its anti-retaliation provision does not protect against petty slights, minor annoyances, and bad manners."); *Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) ("[T]he action must be more disruptive than a mere inconvenience or an alteration of job responsibilities.") (internal quotation marks omitted). Instead, "an adverse action must materially alter the terms or conditions of employment to be actionable." *Porter*, 700 F.3d at 954.

The parties dispute whether Gupta's December 2015 performance review was a materially adverse employment action. The City says it was not, for two alternative reasons. First, it contends that the performance review was not "negative" because Gupta received an overall rating of "satisfactory." Doc. 16 at 5-6. Second, the City contends that a negative performance review cannot constitute a materially adverse employment action unless it is accompanied by a tangible job consequence, which Gupta has failed to allege. *Ibid.*; Doc. 22 at 1-3. There is no need to reach the first ground, because the City is correct about the second.

The Seventh Circuit has repeatedly held that "[u]nfair reprimands or negative performance reviews, unaccompanied by tangible job consequences," are not materially adverse employment actions. *Boss*, 816 F.3d at 919; *see also id.* at 915, 919 (holding that the plaintiff's "downgraded" performance review and "being put on a performance improvement plan" were not materially adverse because there was no evidence that either was "tied to his bonus or any other tangible job consequence"); *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) ("[U]nfair reprimands or negative performance evaluations, unaccompanied by some *tangible* job consequence, do not constitute adverse employment actions."); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009) ("[W]ritten reprimands without any changes in the terms or

5

conditions of [the plaintiff's] employment are not adverse employment actions."); *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001) ("With regard to her claim that the letter of reprimand constituted an adverse job action, the plaintiff-appellant ignores firmly established circuit precedent that a letter of reprimand is not an adverse employment action *unless the letter is accompanied by some other action, such as job loss or demotion.*").

Gupta counters by pointing to this sentence of *Silverman v. Board of Education of Chicago*, 637 F.3d 729 (7th Cir. 2011): "In this context, we agree with Silverman that a negative performance evaluation could constitute an adverse action within the meaning of the direct method of proving retaliation … ." *Id*. at 741. That sentence does not overturn settled Seventh Circuit precedent holding that negative performance reviews alone are not actionable.

In *Silverman*, a high school teacher became pregnant during the 2004-2005 school year, learned her contract would not be renewed, filed a pregnancy discrimination charge with the EEOC, and then was rehired to a different position at the same school for the 2005-2006 school year. 637 F.3d at 732. During the 2005-2006 school year, she received negative performance evaluations, and the school declined to renew her contract once again at the end of that year. *Id*. at 732, 740. The Seventh Circuit affirmed summary judgment against her, reasoning that even if her negative performance reviews during the 2005-2006 school year qualified as materially adverse, she failed to show that they were causally linked to her EEOC charge. *Id*. at 741. En route to that conclusion, without citation or elaboration, the Seventh Circuit made the above-quoted assertion that the evaluations could count as materially adverse. *Ibid*.

*Silverman* does not help Gupta. Silverman's negative performance reviews, unlike Gupta's, *were* accompanied by a tangible employment consequence: her contract was not renewed at the end of the school year. That is why the Seventh Circuit, in the passage upon

6

which Gupta relies, was careful to say that "a negative performance evaluation *could* constitute an adverse action" "[i]n *this context*." *Ibid*. (emphasis added) (adding for good measure that "context matters to the determination of what constitutes a materially adverse action"). There is no indication that the Seventh Circuit meant by that sentence to upend its substantial body of case law holding that negative performance reviews are not materially adverse actions unless accompanied by a tangible employment consequence. As the Seventh Circuit has cautioned: "That's not how precedent works. In this circuit it takes a circulation to the full court under Circuit Rule 40(e) for one panel to overrule another." *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015) (holding that a later Seventh Circuit decision could not have overruled an earlier decision without so much as citing it). There was no Circuit Rule 40(e) circulation in *Silverman*.

Gupta next suggests that her performance review *was* accompanied by tangible employment consequences, pointing to Peso's failure to meet with Gupta and refusal to elaborate upon her critiques of Gupta's performance. Doc. 20 at 5. But those are not the kind of *tangible* job consequences that the law contemplates; instead, Gupta must allege some "immediate consequence of" her negative evaluations, "such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities." *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 613 (7th Cir. 2001); *see also Jones*, 613 F.3d at 671 (holding that "palpable tension" in the workplace accompanying a reprimand did not make the reprimand a materially adverse employment action); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (holding that reprimands were not materially adverse where they did not "carry with them immediate, albeit non-economic, consequences that in and of themselves go so far as to materially alter the terms and conditions of employment"); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) (holding, in a case alleging retaliation under the Americans

7

with Disabilities Act, that warnings issued to the plaintiff carried no tangible job consequences where he was not "terminated, placed on probation, or hindered in any way from maximizing his pay"). Gupta relies only on Peso's refusal to meet with her and reluctance to give detailed feedback, and so has failed to allege that her performance evaluation was accompanied by anything qualifying as a tangible employment consequence.

To support her assertion that Peso's cold shoulder was a tangible consequence, Gupta cites *Cobb v. Tellabs*, 2002 WL 47024 (N.D. Ill. Jan 8, 2002). Doc. 20 at 4-5. *Cobb* held that a plaintiff stated a Title VII retaliation claim where he "alleged (1) a poor performance review and (2) terms and conditions of employment different than those afforded other employees." 2002 WL 47024, at *2. The court reasoned that "[t]hese allegations support[ed] the inference that there were other actions, in addition to the poor performance review," that the employee suffered. *Ibid.*. *Cobb* may be correct that different "terms and conditions of employment" flowing from a negative review could make that review materially adverse. *See Whittaker*, 424 F.3d at 648 (equating "tangible job consequences" with "consequences that … materially alter the terms and conditions of employment"). But that is of no moment here—Gupta has not alleged that she was singled out for different "terms and conditions of employment" stemming from the review. Indeed, *Cobb* distinguished between the plaintiff's "different terms and conditions of employment" allegation (which the court thought supplied the necessary factual predicate to infer "tangible consequences") from a separate allegation that the plaintiff was "ridiculed, embarrassed, and ignored by a manager" (which the court apparently did not). 2002 WL 47024, at *1. *Cobb* thus does not stand for the proposition that a manager's failure to meet with a subordinate is a tangible employment consequence.

The complaint's remaining allegations require only brief discussion, because none comes close to counting as a materially adverse employment action. Gupta's allegation that Tao verbally chastised her on one occasion for allegedly yelling at subordinates does not qualify; if a negative formal performance review is not materially adverse standing alone, then a supervisor's informal verbal critique even more clearly is not. *See Vance v. Ball State Univ.*, 646 F.3d 461, 475 (7th Cir. 2011) ("Vance argues that Ball State retaliated against her by issuing her a verbal warning for allegedly splattering gravy on [a co-worker] and slamming pots and pans on the counter. Although we give the concept of an adverse employment action a generous construction, it is not this broad."). Peso's failure to hold the same monthly meetings with Gupta that she held with Castellanet does not qualify either, as mere "snubbing by supervisors" is not materially adverse. *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); *see also Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012) ("Personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable under Title VII, and we think that getting a cold shoulder from your boss easily falls within this non-actionable category.") (citation omitted) (internal quotation marks omitted); *Bell*, 232 F.3d at 555 (holding that a higher-up's refusal "to greet [one of the plaintiffs] or speak to her" was a "trivial matter[] that d[id] not rise to the level of actionable retaliation"). And Tao's refusal, on a single occasion, to discuss Gupta's job expectations with her fails for the same reason.

## Conclusion

Because Gupta has failed to state a viable Title VII retaliation claim, the City's motion to dismiss is granted. The dismissal is without prejudice to Gupta's filing an amended complaint that attempts to correct the deficiencies identified above. *See Runnion v. Girl Scouts of Greater*

*Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Gupta has until July 11, 2017 to amend her complaint. If she does not do so, the dismissal will convert automatically to a dismissal with prejudice, and judgment will be entered. If Gupta amends her complaint, the City shall answer or otherwise plead by August 1, 2017.

June 20, 2017

_____
United States District Judge